MABEL MANKE, PEARL GARDNER AND DONALD STUART BAB, APPELLANTS, *v.* ESTHER E. PRAUTSCH, RESPONDENT.

No. 4858

May 10, 1965      401 P.2d 680

*Stewart & Horton* and *Wilbur H. Sprinkel,* of Reno, for Appellants.

*Bible, McDonald & Carano,* for Respondent.

262

## OPINION

By the Court, BADT, J.:

This is an appeal from a judgment enjoining the appellants, as the trustee and beneficiaries under a deed of trust, from selling the trust properties pursuant to the powers granted in the deed of trust. The trustor is the plaintiff and respondent herein.

Respondent Prautsch purchased the property from appellant Manke and her husband, and on November 18, 1960, executed a deed of trust securing a promissory note for $33,720.65. This was subject to a prior deed of trust on the same property. The note and deed of trust in question were assigned by appellant Manke to appellant Gardner February 24, 1961, to secure an obligation of Manke to Gardner in the sum of $9,906.56. The original trustee was Pioneer Title Insurance Company of Nevada, which was succeeded by appellant Bab, who in turn was succeeded by Margaret H. Price.

On August 16, 1961, the attorneys for Gardner advised respondent by letter that they were the holders of the note and deed of trust in question and advised that they were about to record a notice of breach and election to sell "for your failure to comply with your covenants in the trust deed requiring you to keep and maintain the real property, buildings and improvements located thereon in a good state of repair."

They further specified as follows: "We are advised that several buildings have been torn down; that the inside and outside of the buildings both, are in disrepair

and that the lawn has died;[1] some of the trees are dead,[2] and that the entire building has been allowed to get into such a run-down condition *as to seriously impair its value.* Accordingly, the full amount is declared due and payable and we will proceed to file the notice of breach and election to sell, if the condition is not corrected and the amount paid." (Emphasis supplied.)

On October 2, 1961, a formal notice of breach and election to sell under deed of trust was executed and recorded. The breach therein described was "that the trustor has failed and neglected to keep and maintain the above-described real property and the buildings and improvements thereon, in a good state of repair and has torn down and removed buildings *which tend to impair or reduce the value of the property transferred."* (Emphasis supplied.)

The deed of trust adopted by reference all of the covenants of NRS 107.040 and further, pursuant to the permission granted by NRS 107.050, included the following covenant:

"Grantor expressly covenants and agrees that at all times during the term hereof, she will keep and maintain the above described real property and the buildings and improvements located thereon in a good state of repair, and further that she will not make any alteration or alterations to said buildings or improvements which would in any way reduce or impair or tend to reduce or impair the value of the property transferred hereunder."

On December 28, 1961, the substituted trustee executed a notice of sale, reciting therein the breach in the same words used as above quoted in the notice of breach and election to sell. All statutory requirements for recordation and publication were observed.

In appellants' reply brief appellants abandon reliance upon the removal of the sheds as constituting a breach of the covenant.

Appellants' opening brief argued that the record contains uncontradicted testimony that five trees were removed from the residential portion of the premises

---

[1] These two items have since been abandoned by appellants.
[2] This has likewise been abandoned.

and no evidence that the trees were replaced by trees for a similar purpose. Respondent testified that the seven trees on the premises at the time of her purchase were in bad condition and she had several of them removed after she had been advised by a forestry expert that they were infected by borers and were dying. This testimony was substantiated by two other witnesses and was recited in respondent's answering brief. Appellants in their reply brief made no further comment and apparently abandoned the tree issue.

Appellants in their opening brief relied on a change in the character and use of the land as constituting waste when such changed character is contrary to good husbandry and would not be suffered by a man of prudence. Referring to respondent's denials, appellants maintained that the record contained uncontradicted testimony that the premises were used for storage and repair of motor vehicles contrary to the use to which the premises had previously been put prior to the purchase and that such vehicles and parts thereof were stored upon the front and back yards after the purchase, and that wrecked vehicles were being hauled on to the premises for repair work, which was being done contrary to a city zoning ordinance. Witnesses in behalf of appellants testified that appellants' photographs taken in 1955 accurately depicted condition of the property when it was sold and that the photographs taken in December, 1961, show how it had subsequently deteriorated under respondent's occupancy. Testimony in behalf of respondent claimed that this was not the case.

In rebuttal respondent testified that after she rented the property to certain tenants and moved to Wisconsin in August, 1961, she was notified that the tenants were carrying on some type of car activity on the premises; that she then came back to Reno, hired a nursery to look after the trees and plant shrubs, and that in June of 1963 the property was as shown in her later photographs. She testified that when she moved into the house it was in a state of disrepair; that several old truck bodies were lying in the back yard; that the Mankes had had a trucking business and the back yard had been

used for parking and repairing the trucks; that a few months after she entered the premises she was served with a notice from the Reno Fire Department stating that trash, weeds and old sheds had been allowed to accumulate on the property and that if the premises were not cleared up within 14 days she would be required to appear before the city council; that shortly after this notice the sheds were pulled down and a Reno firm was employed by respondent to haul the debris away; that the same firm was also employed to clean up the yard, filling in dangerous holes, removing dead wood and what not from the yard, receiving from respondent $150 for these services.

That there was a conflict in the evidence as to the facts with reference to each point asserted as a breach of the covenant to maintain and repair and the covenant against waste we think is evident. The court filed a written opinion in which it concluded "that there is no basis in law or in fact to sustain defendants' contentions for foreclosure of the deed of trust here involved; that the alleged and relied upon acts of waste, do not constitute such under law and facts of this case; that the security for the deed of trust has not in any manner been impaired as a result of alleged acts of waste." It concluded that the defendants should be enjoined from exercising the power of sale under the deed of trust "for any and all alleged faults here involved and actually litigated." Findings and conclusions and judgment followed along the lines of such written decision.

Appellants have cited numerous cases in which a mortgagee was held justified in accelerating the maturity of the mortgage when covenants for maintenance and repair and against waste had been violated and the value of the security had been impaired. We find no fault with these authorities. It may be noted here that in the present case there was no claim of any default in payment of principal or interest.

Respondent has submitted the case of Lawton v. Lincoln, 200 Okl. 182, 191 P.2d 926, in which an action for foreclosure of a mortgage resulted in a judgment for

the defendant mortgagor. The mortgage contained a covenant against waste and for the keeping of the improvements in a good state of repair, and a further covenant providing for acceleration of the maturity of the principal sum at the option of the mortgagee upon breach by the mortgagor of any of the covenants of the mortgage. The syllabus by the court correctly recites the holding:

"1. In a suit of equitable cognizance to foreclose a real estate mortgage, proof that buildings were removed from the mortgaged property by the mortgagor without the consent of the mortgagee is not sufficient to establish waste so as to invoke the acceleration clause, where the proof established that the value of the mortgaged property, without the buildings, was greatly in excess of the amount of the mortgage debt."

In the course of its opinion the court said: "The evidence clearly reflects that the defaults upon which the action is predicated did not render the mortgage security inadequate."

Appellants contend that it was the burden of the respondent in the case of any of the defaults relied upon (which upon the briefs and oral argument now appear to be concentrated in the claim that there was a change of use of the property) to prove that the security was not thereby rendered inadequate. The lack of logic in this view is illustrated by the reliance first placed by appellants upon the removal of the trees, which was simply explained by a showing that they were diseased and had to be cut down under the professional advice received. It is further illustrated by the fact that reliance had at first been placed upon the removal of a shed, but the respondent proved that the shed had been built by the Mankes, from whom she purchased the property, ten years before such purchase at a cost of $200 and that it was filled with junk and debris and had become a fire hazard, and its removal was ordered by city authorities. It is further illustrated by the fact that the default asserted in allowing trucks and parts of trucks to be

stored upon the premises was but a continuation of the use practiced by the beneficiary prior to the sale, and in any event was cured when the trustor later cleaned up the premises. It is the burden of the party claiming a breach of the covenant of maintenance and repair to show that the security for the debt was impaired.

It would be an unreasonable and unjustifiable rule if on every occasion that a mortgagor or trustor cut down a tree or removed an old shed in the exercise of ordinary husbandry, he was compelled to accompany such act with proof that it did not render the mortgage security inadequate in order to forestall an acceleration of the maturity of the mortgage or trust deed; or if a like burden were imposed on the mortgagor or trustor upon notice of the acceleration of the maturity of the debt on minimal charges of breach of a covenant to maintain and repair.

In St. Martin v. McGee, 82 So.2d 736 (Fla. 1955), an appeal was taken from a final decree dismissing a complaint to foreclose a mortgage because of a breach of a covenant to repair. The court held that in the absence of a showing that security had been impaired, and in view of the fact that the security had probably been enhanced by certain improvements made by the mortgagor, it would be unjust and inequitable to order foreclosure. The court concluded that there was substantial evidence to support the trial court's finding that the covenant to repair was not breached. We are in accord with the reasoning of this case.

Of course proof of the inadequacy of the security, resulting from the trustor's use of the premises, could have been simply made through the testimony of qualified appraisers, as to the value at the time of respondent's purchase, and the value at the time of appellants' notice of acceleration of the maturity and election to sell. Such proof was not offered.

We think that the court's finding that none of the acts relied upon as a default in the covenant against waste or for maintenance and repair in any way impaired

the security of the deed of trust is supported by substantial evidence. The injunction against the foreclosure sale was proper.

Affirmed.

THOMPSON, J., and COLLINS, D. J., concur.